**TENNESSEE GAS TRANSMISSION CO.
v. BRITTON.**

**Civ. A. 3261.**

United States District Court
W. D. Louisiana, Monroe Division.

April 27, 1951.

Burt W. Sperry and Shotwell & Brown,
all of Monroe, La., for plaintiff.

Dhu & Lea S. Thompson, Monroe, La.,
for defendant.

DAWKINS, Chief Judge.

This suit was brought under the provisions of Section 717f, Title 15, U.S.C.A. Subsection (h), which is quoted as follows: "When any holder of a certificate of public convenience and necessity cannot acquire by contract, or is unable to agree with the owner of property to the compensation to be paid for, the necessary right-of-way to construct, operate, and maintain a pipe line or pipe lines for the transportation of natural gas, and the necessary land or other property, in addition to right-of-way, for the location of compressor stations, pressure apparatus, or other stations or equipment necessary to the proper operation of such pipe line or pipe lines, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts. The practice and procedure in any action or proceeding for that purpose in the district court of the United States shall conform as nearly as may be with the practice and procedure in similar action or proceeding in the courts of the State where the property is situated: *Provided*, That the United States district courts shall only have jurisdiction of cases when the amount claimed by the owner of the property to be condemned exceeds $3,000."

The complainant alleges it holds the proper certificate of necessity and convenience for constructing "additional pipe lines" as a part of its "natural gas system extending from a point in the State of Texas to points in the States of West Virginia and Ohio," and that the approved location and route of said pipe lines make it necessary to acquire an easement over the property of defendant in the manner authorized by this statute and the procedure provided by the state law. Paragraph 9 of the complaint reads as follows: "That plaintiff, in good faith, has negotiated with defendant for the acquisition of said right of way, but has been unable to agree with defendant therefor; that although said right is not worth as much as Three Thousand Dollars ($3000.00), de-

fendant is claiming in excess of that amount for same."

Defendant filed its "Special Pleas, Answer and Counterclaim," first denying jurisdiction as indicated in said Article 9 of the complaint, but admitting "that there is a controversy between the plaintiff and your defendant," while insisting less than $3000 is involved. Extensive allegations are made as to the value of the properties sought to be taken, damages that will be caused to the entire tract, etc. The most pertinent article, No. 11, of the answer, on the question of jurisdiction, ratione materiae, is as follows: "Further answering and in the .. .er-native and in case the court should hold that it has jurisdiction, and in the further alternative and in case the court should further hold that the plaintiff is entitled to the right-of-way and easement over and across your defendant's land as proposed, then and in that case defendant is entitled to recover from the complainant for the property covered and included in the easement the sum of Eight Hundred, Seventy-five and No/100 ($875.00) Dollars, and for the value of the timber and growth thereon the sum of One Hundred and No/100 ($100.00) Dollars, and for the damages to and depreciation of the balance of defendant's land composing said tracts the sum of Two Thousand and No/100 ($2,000.00) Dollars; or the aggregate sum of Two Thousand, Nine Hundred, Seventy-five and No/100 ($2,975.00) Dollars."

The final paragraph, No. 18, preceding the prayer is also quoted as follows: "Defendant shows that the building of a high pressure line destroys to a large extent the value of the property in and around such line for the purposes for which defendant's land is most valuable, and destroys its sale value to the extent that he will be damaged in addition to the value of the right-of-way sought and in addition to the loss of timber and growth, the sum of Two Thousand ($2,000.00) Dollars, as hereinabove alleged."

While nothing is said in Article 11 about damages to the property which will be caused by construction of the "high pressure lines," as is claimed in Article 18, it may be assumed that the latter was simply an elaboration or recital of further details as to the nature of the damages, since the total sum prayed for is $2975, or approximately $26 below the jurisdiction of this court.

At the hearing of the plea to the jurisdiction and motion to dismiss, at defendant's instance, evidence was offered by both sides on the matter of the amount in controversy. There is little dispute as to the facts developed by this evidence, including testimony of witnesses and documents. Defendant, George A. Britton, is in poor health, and accordingly executed a power of attorney which was recorded in the conveyance records of this parish, giving his son, Truman Britton, authority to carry on negotiations and to complete transactions with the plaintiff concerning the right-of-way for the pipe line. Plaintiff's first offer was $500, which was met with the figure of $5500 by defendant. Further negotiations were carried on for more than a month. At the final meeting in which an amicable settlement was attempted plaintiff increased its offer to $750, but defendant still demanded $3500. There is some contention that there was no indication that these figures were final. However, it appears clear that the parties, still on good terms, definitely agreed and understood that the price could be established only by a law suit. Thereupon, this action was filed and met by the answer, which, somewhat significantly, demanded an amount only a few dollars below the minimum jurisdiction of this court.

In this case, the usual positions of the parties in ordinary law suits, where the plaintiff demands a sum large enough to be well within the minimum jurisdiction of the court, and the defendant seeks to have the case dismissed on the ground of palpable inflation, are exactly reversed. Plaintiff here alleges that the property rights sought are worth not more than what it had offered, but that defendant's demand or claim was, as stated, $3500, ample to give this court jurisdiction. There is no doubt that if the defendant, as plaintiff, had filed an action for a declaratory judgment fixing the compensation and damages at $2975, there

would be no way in which the defendant (the present plaintiff) could have removed the case to this court, even had it alleged and proved the minimum demand of the landowner before filing, suit, was $3500, or more. It would clearly appear that the latter had remitted any excess above what was actually sued for.

However, in the very nature of things, a utility company seeking such rights, in practically all cases, is put to the necessity of taking the initiative. He, therefore, brings the suit, and the question is, can a landowner, who has insisted on an amount considerably in excess of the minimum jurisdiction of this court, defeat it by abandoning the larger claim previously made, and praying for an amount slightly below $3000 after the suit is filed? It seems rather clear from the language used that Congress recognized that in any instance, where the parties could not agree upon a price, the landowner being in possession and having no need to act, the utility company would have no alternative but to go into court to acquire the right-of-way. Hence, the Act states clearly that when such rights "cannot" be acquired "by contract" or the utility is unable to "agree with the owner of the property to the compensation to be paid * * *, it may acquire the same by the exercise of the right of eminent domain in the district court of the United States for the district in which such property may be located, or in the State courts." Then follows the proviso that the federal court "shall only have jurisdiction of cases when the amount *claimed* by the owner cf the property to be condemned exceeds $3,000." Does this mean the "amount claimed by the owner of the property" in the attempt "to agree with the owner", or what he demands in his answer after the suit is filed, if, for any reason, he prefers to have the controversy heard in another forum?

Since this case is set on the merits for Monday, April 30, and conditions were such that the plea to the jurisdiction and motion to dismiss were not submitted until April 23, upon such authorities as the parties could furnish and such research as the court could make, in view of its time being consumed largely with a term of court, a complete investigation of the law was not possible. However, it is believed that there are certain well-settled principles in view of the nature of the case which support the proposition that the jurisdiction is to be determined by the conditions existing when the suit was filed. The complaint alleges and the evidence by a fair preponderance sustains the conclusion that the plaintiff had offered a maximum of $750, while the defendant declined to consider anything less than $3500. It further appears that when they last parted, having been unable to get together, they each understood that the matter would have to be determined in a lawsuit. Thereupon, the suit was filed by plaintiff, and it is believed that those conditions determined jurisdiction which could not be defeated by the owner of the land reducing his demand after the action had been commenced. See Volume 21, C.J.S., Courts, § 54, subsection b, page 64. The amount in controversy is determined by the pleadings. Id., § 69, page 90. Once jurisdiction has been acquired, it cannot be lost by "counterclaim, or other cross action". Id., § 66 et seq., page 83. It is therefore the view of this court that the plea to the jurisdiction should be overruled, and the motion to dismiss denied.